**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| ASCALE TECHNOLOGIES LLC, Plaintiff, | § | Case No. 7:25-cv-00273-LS |
| v. | § | **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, Defendant, | § | |
| and | § | |
| ALTERA CORPORATION, Intervenor. | § | |

**JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER**

Plaintiff Ascale Technologies LLC ("Ascale" or "Plaintiff"), Defendant Intel Corporation ("Intel"), and Intervenor Altera Corporation ("Altera," and, with Intel, "Defendants") (collectively, the "Parties") hereby submit this Joint Motion for Entry of Disputed Protective Order. Ascale's proposal is attached as Exhibit A, with changes from the Court's default order highlighted. Intel and Altera's proposal is attached as Exhibit B, and Intel and Altera's comparison to Ascale's proposal is attached as Exhibit C.

## I. ASCALE'S PROPOSAL

Ascale proposes that the Court enter its default protective order with minor modifications to add a separate confidentiality designation for source code produced in this case. This modification is substantially similar to the source code provisions found in Judge Albright's default model order, with minor additions for use of an external mouse, monitor and keyboards on the source code review computer, and for provisions regarding source code review tools.

Defendants' proposal balloons the ***7 page*** default protective order into an ***18 page*** protective order by adding ***11 pages*** of additional restrictions that depart sharply from the Court's default protective order and would make discovery in this case impractical, if not impossible. Ascale attempted to find a compromise with Defendants during the parties' meet and confer on June 17, 2026, but Defendants refused to compromise on the vast majority of the disputed provisions. Defendants' departures from the Court's model order fall into at least one of two categories, each of which should be rejected: (1) overly burdensome and overbroad source code restrictions; and (2) provisions that needlessly complicate the order, increasing the likelihood of abuse and unnecessary disputes. As the party seeking heightened protection, Defendants bear the burden of demonstrating good cause for each restriction, and its generalized invocation of confidentiality cannot carry that burden. Defendants have not shown—and cannot show—any

legitimate need for these departures that the Court's default order does not already address. The Court should enter Ascale's proposed order, attached as Exhibit A.

**A. Overburdensome and Overbroad Source Code Restrictions.**

Defendants source code restrictions are designed to impede Ascale and its expert witnesses' ability to rely on source code to prepare its case in chief, or would shift unreasonable burdens onto Ascale as the receiving party following any dispute over the source code. The following are illustrative.

**Burdensome Transport Restrictions (Ex. B, Section 4.n & 4.o).** Defendants' proposed restrictions on the transportation of source code severely impede Ascale's ability to prepare its case in chief by requiring that source-code printouts must be transported only by hand, never by courier, and if carried on a flight must be carried on rather than checked, and outside consultants are flatly "prohibited from keeping copy sets." These rules impose substantial burdens on the receiving party's litigation team and its experts without materially enhancing security beyond the default order's requirement that printouts be maintained in a locked container in counsel's offices. These provisions are further impractical as they would require source code printouts to be hand delivered across the country any time the receiving party requests source code printouts or intends to use source code a deposition or for a hearing. Such a provision would cause multiple days of delay at each instance. For example, this provision would require Plaintiff's expert witnesses to prepare their expert reports at Plaintiff's office, potentially across the country from the expert's residence, because they are "prohibited from keeping copy sets" and Plaintiff's attorneys would be unable to mail source code to its expert witnesses.

**Overbroad Definition of "Source Code" (Exhibit B, Section 3.d.i).** Defendants' proposed definition of "Source Code" reaches far beyond actual source code. In addition to

programming-language code, Defendants would sweep in "schematics," "layout files," "process flows," "recipes," Chip-level schematics," layout files," "Detailed Process Flow" defined as "chart, diagram, or other type of document (or set of documents) that describes the manufactures or assembly of a finished integrated circuit…," "Recipe" defined as "a document constituted or containing where in text, a chart, a diagram, or other manner of presentation of information, a description of the specific formula or recipe for configured tools used in the manufacturing or assembly of a finished integrated circuit." This definition would force a vast array of ordinary technical documents, such as specifications, design documents, schematics, into the most restrictive review regime in the order, requiring on-site review on a stand-alone computer with no electronic copies, even though such documents can be fully protected under the "Confidential – Attorneys' Eyes Only" designation. Defendants identify no legitimate security interest that justifies treating routine technical documentation as source code, and the burden such treatment imposes on discovery is severe. Defendants' argument that Ascale agreed to similar source code definitions in another case is baseless, as Ascale had separate assurances in that matter that the Defendant would not designate specifications and circuit diagrams other than computer-generated chip maps as source code. Worse still, Defendants' proposal would limit the use of all these non-source code documents in expert reports by designation as source code, hamstringing Plaintiff's case. *See* Ex. B, Section 4.r (requiring source code in expert reports to be "the minimum amount necessary to support the specific argument made").

**Restrictions on Printing (Exhibit B, Section 4.g & 4.h)** Defendants' proposal gives them the ability to unilaterally decide whether Plaintiff's requests for source code printouts are for a "permitted purpose" and allows Defendants' to refuse to produce source code printouts if they unilaterally decide that the requested printouts are not relevant or if Defendants' believe that

Plaintiff is requested printouts for analysis at a later time. *See* Ex. B, Section 4.g. This improperly flips the burden onto the receiving party and hands the producing party a tool to throttle discovery. Defendants' proposal would then require the receiving party to initiate motion practice, and carry the burden, to obtain its own printouts. Judge Albright's default protective order's existing terms, which already restrict printouts to a "reasonable number," adequately address any concern about over-printing for purposes of performing an initial review away from the source code computer.

**Unworkable Cap on Source Code Printouts (Section 4.h).** Defendants' would limit the parties to just 350 pages of printed source code per product or architecture. This limit is unworkable as there are 5 unrelated patents asserted in this case, covering different technologies. In a complex case involving hardware, firmware, and software, a 350-page ceiling is far too low to permit meaningful analysis and would force Ascale to attempt to prove its infringement case with one hand tied behind its back. Defendants' proposal permits the limit to be increased by agreement of the parties or on a showing of need; but the baseline itself must be realistic. Defendants offer no reason why 350 pages, rather than a number adequate to the technical complexity of this case, is appropriate. The Court should adopt either a "reasonable number of pages" limitation or a baseline of 750 pages per product or architecture.

**Source Code at Depositions and Hearings (Section 4.q).** Defendants' proposal would prohibit the receiving party from making its own copies of source code for use at a deposition or hearing absent the producing party's prior written consent, require three business days' advance notice "identif[ying] the required pages by production number," and have the producing party supply the copies by hand delivery. Fundamentally, this is tantamount to a compelled disclosure of attorney work product. It would tell the producing party exactly which portions of code the deposing party intends to use and give the producing party advance notice to prepare its witnesses

on precisely that code, and would force the examining party to rely on documents prepared by its adversary. The deposing party also may not know, days in advance, exactly what code it will use.

### B. Defendants' Remaining Provisions Needlessly Complicate the Order and Invite Abuse

Apart from source code restrictions, Defendants' proposal is full of limitations that invite unnecessary disputes and increase the likelihood of abuse. For example, in Section 2.a.ii, an expert or consultant cannot be ***indirectly*** employed by a competitor of a party. Further, Defendants' proposed development bar (Section 5.b) would prohibit ***only Plaintiff's experts*** from performing development work for Defendants' competitors regardless of whether the development work is in the same field as the asserted patents, as well as for "any entity that is attempting to commercialize a product in the same field" as the produced source code. These two provisions would exclude the vast majority of expert witnesses from the case that work in the field of technology for which they are being hired as an expert, and would prevent these expert witnesses from taking on any other cases as experts in this field. As another example, Defendants' clawback provision (Section 21) would require the receiving party to "expunge the privileged material from any derivative documents (including deposition testimony)." Requiring a party to scrub privileged content from derivative documents, including deposition transcripts, is unworkable and overbroad. For example, it invites disputes as to whether the source of information in derivative documents came from a document that was clawed back.

Taken as a whole, Defendants' proposed order is unworkable. It would disproportionately burden the Ascale and impede discovery rather than serve any legitimate security concern, and Defendants apparent assumption that its documents are automatically entitled to extraordinary restrictions beyond the Court's default order is unjustified. Defendants have not articulated any concern that the Court's default order, reflected in Ascale's proposal, does not already address.

Ascale respectfully requests that the Court enter Ascale's proposed protective order, attached as Exhibit A.

## II. DEFENDANTS' PROPOSAL

Ascale seeks production of Defendants' most sensitive technical information for ***over a thousand*** products. This information comprises the blueprints for Defendants' industry-leading processors and reflects decades of R&D and billions of dollars investment, and even within Intel and Altera, it is highly controlled. Competitors and state-sponsored hackers have repeatedly sought to obtain this proprietary data; any public disclosure would greatly damage Defendants' businesses and implicate national security. *See, e.g.*, Intel Corp. 10-K at 46 (Jan. 31, 2026).

Protecting Defendants' highly confidential technical information is critical. So Defendants proposed a protective order ("PO") to Ascale more than four months ago with provisions that courts in this District have repeatedly entered to protect the same type of information. *See, e.g.*, *Proxense LLC v. Intel Corp.*, 24-cv-00283, Dkt. No. 28 (W.D. Tex. Mar. 13, 2025); *VLSI Tech. LLC v. Intel Corp.*, 21-cv-00057, Dkt. No. 75 (W.D. Tex. Sept. 16, 2019). Ascale ignored Defendants' proposal for nearly six weeks and never meaningfully engaged with it in the months that followed.

On June 24, the parties finally met and conferred and appeared to reach agreement on most of the provisions that Ascale now disputes. But days later, Ascale surprised Defendants with an about face—reneging on much of the progress and insisting on competing proposals.

Defendants respectfully submit that good cause exists to enter Defendants' proposal. Each of the provisions Ascale contests is substantively identical to provisions courts in this District have entered to protect Defendants' highly sensitive technical information, and many of them are the ***same*** as what Ascale has ***agreed*** to in parallel litigation. *See Ascale Techs. LLC v. Texas Instruments, Inc.*, 25-cv-00243, Dkt. No. 37 (E.D. Tex. Aug. 28, 2025) ("*T.I.*").

***1. Defendants' Definition of Source Code Is Appropriately Tailored And Identical To What Ascale Itself Has Previously Agreed To.*** Defendants' proposed definition of source code (Ex. C at 2–3 §3(d.i)) accurately defines the full scope of information that courts have routinely protected as such. *See, e.g.*, *Proxense,* 24-cv-00283, Dkt. No. 28 at 2–3; *VLSI*, 21-cv-00057, Dkt. No. 75 at 2–3. It does not sweep in routine technical documents, as Ascale argues. Instead, it enumerates only specific categories of highly proprietary technical material like layout files, which show the exact physical configuration of the microprocessor components. These materials would allow for replication of Defendants' products, and a nefarious actor gaining access would inflict severe harm on Defendants' business. And ***Ascale agreed to the exact same definition*** of source code in *T.I.* *See T.I.* at 5–6. Ascale does not explain why Defendants' technical information here deserves less protection than a similarly situated company defending itself against identical claims.

***2. Access to Highly Confidential Materials Should Be Appropriately Limited.*** Given the sensitivity of Defendants' highly confidential technical materials, Defendants must receive certain basic information about any outside expert to evaluate whether their access would pose a security concern. *See, e.g.*, *Wreal LLC v. Amazon.com, Inc.*, 2014 WL 7273852, at *1, *3–4 (S.D. Fla. Dec. 19, 2014) (requiring disclosure of and opportunity to object to experts and consultants reviewing attorneys' eyes only information). Ascale insists that these disclosures are too "onerous," yet it ***agreed to the same exact requirements*** elsewhere. *T.I.* at 4. Any confidential prior engagement can be handled by disclosing non-identifying information (e.g., the client's industry).

***3. Defendants' Source Code Inspection and Production Proposals Are Appropriate.*** Defendants' proposed source code inspection and production proposals (Ex. C at 7 §4) are likewise necessary and appropriate to protect Defendants' most sensitive materials. *See Drone Techs., Inc.*

*v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) ("[S]ource code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property."). Ascale's complaints are unfounded.

***First***, Defendants' proposal that counsel and experts must review source code on the stand-alone computer "***in the first instance***" (Ex. C at 8 §4(g)) is commonplace and again ***identical to what Ascale itself has agreed to elsewhere***. *See T.I.* at 8; *cf. E–Contact Techs., LLC v. Apple, Inc.*, 2012 WL 11924448, at *3 (E.D. Tex. June 19, 2012) (rejecting request to print all code for a particular feature and thus requiring initial review on source code computer). This requirement does not "confin[e] all analysis to the stand-alone computer" or make review impractical. It simply ensures that Ascale identifies which code is relevant ***before printing***—which a restriction to a "reasonable number" of printouts does not accomplish, as Ascale suggests, if a printout request is reasonable in size but addressed to or encompasses irrelevant material.

***Second***, Defendants' proposed page limit of 350 pages for ***each product or architecture*** (Ex. C at 8 §4(h)) is generous and appropriate in a case where Ascale has accused ***dozens*** of architectures and ***more than a thousand products***. By contrast, Ascale's 750-pages-per-product formula would allow an excessive volume of printed code—vastly more than any party could reasonably review. Ascale does not explain why it needs so many more pages. And indeed, courts have found limits much lower than Defendants' proposal to be reasonable. *See, e.g.*, *E–Contact*, 2012 WL 11924448, at *3 (limiting to 500 ***total*** printed pages of source code); *Unwired Planet LLC v. Apple Inc.*, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (limiting to 250 ***total*** pages). Defendants' proposed limit is tailored to the broad nature of Ascale's contentions, and includes an obligation to "accommodate reasonable requests for additional printed pages" (Ex. C at 8 §4(h)).

***Third***, Defendants propose reasonable restrictions on the use of source code in depositions

and hearings (Ex. C at 10 §4(r)), again mirroring protective orders that courts in this District have approved in similar cases. *See, e.g.*, *Proxense*, 24-cv-00283, Dkt. No. 28 at 8; *VLSI*, 21-cv-00057, Dkt. No. 75 at 17. Ascale mischaracterizes these provisions as barring it from using source code or forcing it to waive work-product protection. Not so. Under Defendants' proposal, Ascale can obtain permission to use source code at a deposition or hearing without having to identify specific pages in advance. (Ex. C at 10 §4(r)).[1]

***Fourth***, Defendants' provisions that printed source code must be kept secure (*i.e.*, locked at outside counsel's office) and not shipped by mail are basic precautions to prevent loss or theft. Contrary to Ascale's complaint that these commonsense safeguards are too burdensome, numerous courts have adopted similar measures. *See, e.g.*, *Proxense*, 24-cv-00283, Dkt. No. 28 at 8; *Premier Int'l Assocs., LLC v. Apple Inc.*, 2007 WL 7307061, at *6 (E.D. Tex. Sept. 11, 2007) (paper copies must be stored in locked room and no transportation of code "in any way" from the Producing Party's facilities or the offices of its outside counsel of record").

***Finally***, Ascale does not take issue with several other source-code provisions Defendants proposed, and the Court should adopt them in full. (Ex. C at 7–10). As one example, for obvious security and copying risks, source code reviewers should not be allowed to bring electronic devices into the review rooms and/or take notes about source code on loose-leaf paper. (Ex. C at 7 §4(b)); *GeoTag, Inc. v. Frontier Commc'ns Corp.*, 2013 WL 12134192, at *3 (E.D. Tex. Jan. 8, 2013) (the "interest of protecting the source code far outweighs the convenience of allowing" electronic devices in secure source code room). Defendants also include provisions to regulate storage,

[1] A source code computer can be made available at depositions and hearings, negating the security risk of making extra copies at all—although Defendants' proposal provides for such copies if necessary. And if Ascale needs to use source code at a hearing, it presumably will have included that code in a filing beforehand, meaning that its request for permission will reveal nothing new.

handling, and export of all highly sensitive materials (accounting for risks like AI data ingestion and export-control laws). (Ex. C at 11–13 §6(b)–(e)). Ascale does not dispute that these and all other source code provisions Defendants propose are reasonable and necessary.

***4. Defendants' Proposed Development and Prosecution Bars Are Reasonable and Necessary.*** Defendants' proposed development and prosecution bars (Ex. C at 11 §5) mirror the protective-order provisions that courts commonly approve in similar cases. *See, e.g.*, *Red Rock Analytics, LLC v. Apple Inc.*, No. 21-cv-00346, Dkt. No. 198 at 19–20 (W.D. Tex. Jan. 1, 2026); *Proxense,* 24-cv-00283, Dkt. No. 28 at 8–9; *VLSI*, 21-cv-00057, Dkt. No. 75 at 30–31. Critically, Ascale offers ***no*** narrower alternative; indeed, at the parties' meet and confer, Ascale agreed to all but the scope of "competitor." The bars ensure that anyone who reviews Defendants' most sensitive design information cannot later use that knowledge to assist a competitor, and they protect Defendants' business without burdening Ascale's ability to litigate.

***5. Defendants' Clawback Provision Is Standard and Necessary.*** Defendants have proposed a clawback provision (Ex. C at 17 §21) that requires returning or destroying inadvertently produced privileged information, as other courts have required and to which Ascale has agreed elsewhere. *See, e.g.*, *T.I.* at 11–12; *Proxense*, 24-cv-00283, Dkt. No. 28 at 12–13. Ascale provides no alternative, and its only objection to the paragraph is its speculation that "expunging" privileged content from derivative materials is unworkable. Ensuring reasonable efforts are taken to remove ***all*** inadvertently produced privileged material is well-accepted under Fed. R. Evid. 502(d).

***6. Defendants' Proposal Should be Adopted in Full.*** Defendants have proposed several other provisions that courts have adopted in several other cases and that Ascale does not take issue within its briefing. (*E.g.*, Ex. C at §§2(c), 7(b), 11). Defendants ask the Court to adopt those and the provisions discussed above by entering the protective order attached as Exhibit B.

Dated: July 9, 2026

Respectfully submitted,

*/s/ Vincent J. Rubino, III*

Raymond W. Mort, III
Texas Bar No. 00791308
Email: raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel/Fax: 512-865-7950

*OF COUNSEL*:

Peter Lambrianakos (*pro hac vice*)
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III (*pro hac vice*)
NY Bar No. 4557435
Email: vrubino@frlip.com
Jacob Ostling (*pro hac vice*)
NY Bar No. 5684824
Email: jostling@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF***
***ASCALE TECHNOLOGIES, LLC***

By: *<u>/s/ Sarah R. Frazier (with permission)</u>*

Brian C. Nash (SBN: 24051103)
BNash@mofo.com
**MORRISON & FOERSTER LLP**
300 Colorado Street, Suite 1800
Austin, TX 78701
Phone: (512) 617-0650
Facsimile: (737) 910-0730

Sarah R. Frazier (Mass. BBO No. 681656)
sarah.frazier@wilmerhale.com
Jordan L. Hirsch (*pro hac vice*)
jordan.hirsch@wilmerhale.com
Thomas F. Lampert (*pro hac vice*)
thomas.lampert@wilmerhale.com
**Wilmer Cutler Pickering Hale and Dorr LLP**
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
Facsimile: (617) 526-5000

Haixia Lin (*pro hac vice*)
haixia.lin@wilmerhale.com
**Wilmer Cutler Pickering Hale and Dorr LLP**
2100 Pennsylvania Ave NW
Washington, DC 20037
Phone: (202) 663-6000
Facsimile: (202) 663-6363

Taylor Gooch (*pro hac vice*)
taylor.gooch@wilmerhale.com
**Wilmer Cutler Pickering Hale and Dorr LLP**
50 California Street, Suite 3600
San Francisco, CA 94111
Phone: (628) 235-1000
Facsimile: (628) 235-1001

*Counsel for Defendant Intel Corporation*

*<u>/s/ Paige Arnette Amstutz (with permission)</u>*
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
Email: pamstutz@scottdoug.com

Tara D. Elliott (pro hac vice)
Jacob C. Vannette (pro hac vice)
Connor Wheeler (pro hac vice)
Brian Smallshaw (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
T: (202) 637-2200
F: (202) 637-2201
Tara.Elliott@lw.com
Jake.Vannette@lw.com
Connor.Wheeler@lw.com
Brian.Smallshaw@lw.com

*Attorneys for Defendant Altera Corporation.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Ascale conferred with counsel for Intel and Altera in good faith regarding the relief requested in this Motion. The parties were unable to reach agreement on the disputed provisions of the protective order and bring these issues to the Court for decision.

*/s/ Vincent J. Rubino, III*
Vincent J. Rubino, III