**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| ASCALE TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant.<br>and<br><br>ALTERA CORPORATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 7:25-cv-00273-LS<br><br>**JURY TRIAL DEMANDED** |

**JOINT MOTION FOR ENTRY OF A DISPUTED AMENDED SCHEDULING ORDER**

Plaintiff Ascale Technologies LLC ("Ascale" or "Plaintiff"), Defendant Intel Corporation ("Intel"), and Altera Corporation ("Altera") (Intel and Altera are, collectively, "Defendants") respectfully file this Joint Motion for Entry of a Disputed Amended Scheduling Order and would show the Court as follows:

This suit was filed on June 16, 2025. Altera filed a motion to intervene in this action on April 7, 2026 (Dkt. 48), and discovery opened as to all parties on April 21, 2026, the date on which the claim construction hearing was originally scheduled pursuant to the December 9, 2025 Scheduling Order (Dkt. 37). The parties set forth their respective positions regarding the competing scheduling proposals below. The parties also jointly respectfully request a status conference regarding the case, including to discuss rescheduling of the *Markman* hearing.

## I. ASCALE'S PROPOSAL

Ascale respectfully seeks an extension of the remaining deadlines in the Scheduling Order by nine months. Ascale understands that Intel and Altera do not oppose an extension of the

November 23, 2026 deadline for opening expert reports and deadlines thereafter, but that Intel and Altera do oppose an extension of the November 16, 2026 deadline for the close of fact discovery. Ascale further proposes that the deadline for the close of third-party fact discovery coincides with opening expert reports on November 23, 2027 in light of the multiple third-party issues arising at this stage in fact discovery, which are discussed below.

Ascale submits that there is good cause for an extension, including the close of fact discovery, to allow sufficient time for a claim construction hearing, to allow time to conduct discovery of an inventor who Intel's counsel recently disclosed that they represent, and to allow sufficient time to conduct discovery while operating under the Protective Order.

First, the parties have briefed a number of claim construction disputes which would significantly impact the scope of the asserted patent claims. This is a complex case with five unrelated patents and two Defendants. Claim terms in three of those patents are disputed. These issues of claim scope have a significant consequence on the relevant technical and prior art discovery which needs to be obtained, particularly the relevant testimony that needs to be obtained from witnesses during depositions. Such discovery would further streamline the remainder of the case by ensuring that any dispositive and *Daubert* motions are briefed on as full a record as possible.

Second, an extension is warranted to allow fact discovery, particularly of source code, with the benefit of the Protective Order, which has yet to be entered in this case. As a threshold matter, the parties are not yet permitted to disclose confidential materials to technical experts as will be required for opening expert reports, currently scheduled for November 23, 2026. Moreover, Ascale has not had the opportunity to disclose technical experts and reviewers under the Protective Order to conduct source code review to date.

Defendants argue that Ascale has neither sought to review the source code nor identified an expert to review it. Without a Protective Order in place, however, Ascale has no mechanism to disclose an expert witness to Defendants, no confidentiality restrictions governing the expert's access to source code, and no procedures for reviewing and printing source code for use in discovery and expert reports. Indeed, the central dispute over the Protective Order concerns the review and handling of source code, as Defendants acknowledge below. Defendants baselessly argue that Ascale "***never*** reviewed [the] code nor disclosed a single expert it seeks to have review it." Contrary to Defendants assertion, Defendants explicitly prohibited Ascale from disclosing confidential information including source code that it produced under Judge Albright's Interim Protective Order to anyone, including experts and consultants, other than "outside attorney(s) of record and employees of such outside attorney(s)." Rubino Decl., ¶ 3, Ex. A. Indeed, Defendants' conditions for producing source code also excluded any procedure for allowing experts or consultants to review the source code – setting aside the absence of procedures under which to disclose outside consultants or experts. Rubino Decl., ¶ 4, Ex. B.

Defendants' further contention that Ascale's attorneys could have reviewed the source code without technical experts is misplaced. This case involves highly technical subject matter concerning complex processors and systems-on-chips at the source-code level, requiring review by an expert with relevant computer-processor source-code expertise. Several key source-code provisions remain in dispute. Defendants contend that Ascale initially disputed, or continues to dispute, provisions identical to terms entered in prior cases involving Ascale. That contention is unsupported: Defendants have identified no such examples to Ascale or the Court. Indeed, Defendants conceded on several of the key disputed provisions as late as September 23, 2026, including raising the print limits to 400 pages per product family, deletion of the clawback

provision as to deposition transcripts, and narrowing of the Development Bar to "development work for commercial purposes related to integrated circuit design." While the parties have now compromised on most Protective Order provisions, Defendants' Protective Order still prohibits any delivery of source code printouts to technical reviewers, and limits the parties to two copies of code at counsel's offices. Ascale has indicated that a shorter extension of five months would be workable if Defendants could compromise on that position (which will otherwise require extensive travel by experts in advance of expert reports).

During the meet-and-confer between Plaintiff and Defendants, Intel and Altera argued that source code was unnecessary because it was not cited in Ascale's final infringement contentions. But infringement contentions identify a party's theories as to the asserted claims; they do not limit the scope of evidence available to prove infringement consistent with those theories. *See ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014) (contentions and expert reports are not coextensive because contentions "need not disclose specific evidence"); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 WL 2651618, at *12 (E.D. Tex. June 20, 2017) (denying motion to strike expert reliance on source code not cited in contentions because, once the theory is disclosed, "every underlying item of proof (such as source code) does not need to be disclosed"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016) (contentions are "not required to cite all the evidence its experts would rely on"). The fact that Intel and Altera did not make source code available under the Protective Order (and objected to producing numerous categories of technical documents on that basis) does not limit the scope of relevant materials available in the case. *See* Intel's Objections and Responses to Ascale's First Set of Interrogatories (May 22, 2026) at 6–7 (General Objection No. 28; Objection to Definition No. 2), 11–12 (Response to Interrogatory No. 2), 49–50 (Response to Interrogatory

No. 11); Intel's First Supplemental Objections and Responses to Ascale's First Set of Interrogatories (Aug. 17, 2026) at 11 (Supplemental Response to Interrogatory No. 1), 99 (Supplemental Response to Interrogatory No. 7), 117–18 (Supplemental Response to Interrogatory No. 11); Altera's Objections and Responses to Ascale's First Set of Interrogatories (May 22, 2026) at 3–4 (General Objections Nos. 5–6), 31–32 (Response to Interrogatory No. 11).

Third, Intel's recent supplements to discovery requests served over 5 months ago necessitates an extension to permit third-party discovery, especially Intel's U.S. sales volumes. Ascale served its Interrogatory No. 4 on April 22, 2026, seeking certain financial information for the accused products. Intel responded on May 22, 2026, refusing to substantively respond and improperly stating that it would, *at a later date*, identify documents under Fed. R. Civ. P. 33(d) responsive to Ascale's interrogatory. Intel then waited 3 months to identify relevant financial information in an August 17, 2026 supplement and inform Ascale that the provided financials were for worldwide sales and that Ascale "bears the burden of demonstrating a U.S. nexus for any alleged damages." *See* Intel's First Supplemental Objections and Responses to Ascale's First Set of Interrogatories (Aug. 17, 2026) at 20 (supplemental response to Interrogatory No. 4); *see also id*. at 4 (General Objection No. 16). Intel now asserts that it does not track U.S. specific sales figures, which are highly relevant to determining damages based on a reasonable royalty for infringement in the United States.[1] In response to this belatedly produced information, Ascale has

[1] On October 2, 2026, the day Intel produced its portion of this joint statement to Ascale, Intel attempted to moot this issue by producing spreadsheets that allegedly contain "transactional data sufficient for Ascale to determine the percentage of units sold that have a nexus to the United States." This production consists of approximately 15 ***million*** individual transactions divided over 100 spreadsheets. Intel withheld this information for months until it believed producing it now would moot the need to extend fact discovery. Ascale has not had time to fully review these voluminous spreadsheets, which, due to their complexity and Intel's failure to identify or explain these spreadsheets in response to Ascale's interrogatory on financials relating to the accused products, cannot be fully understood without deposing Intel's 30(b)(6) witnesses. Moreover, the

recently sought to obtain this information from Intel's major U.S. customers through subpoena. However, given that this issue arose in August, and given the likelihood that third-parties will not respond until the protective order is entered, an extension to secure production of relevant materials and take any necessary depositions is warranted.

Fourth, counsel for Intel first disclosed that they represent several inventors of the asserted patents, including Marcus May, inventor of the '266 Patent, and Daniel Mulligan, inventor of the '991 Patent, and Christopher K. Y. Chun, inventors of the '136 Patent in an August 17, 2026 amendment to their initial disclosures. Ascale expects to move to disqualify Messrs. May, Mulligan, and Chun based on their confidential and privileged relationship with Sigmatel (acquired by Freescale and later NXP, which has a financial interest in this case and shares common interest with Ascale), and receipt of confidential and privileged information from Sigmatel—the same information on which Defendants now rely. *Four Batons Wireless, LLC v. Samsung Elecs. Co.*, 2025 WL 1658922, at *2 (E.D. Tex. June 11, 2025) (Factors for disqualifying exerts include "(1) whether the opposing party had a confidential relationship with the expert; and (2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert."); *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, 2006 WL 5111116, at *2 (E.D. Tex. Feb. 9, 2006) (Disqualifying inventor as expert where "[t]he expert is a former Sensormatic employee, a named inventor on one of the patents in suit."); *Koch Refin. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). Each of these inventors, whom Defendants now assert they represent, had a duty of confidentiality and privilege to Sigmatel and/or Freescale

production of 15 million individual transactions merely demonstrates that Intel continues to withhold summarized financials from Ascale for United States sales, which may force Ascale to file a motion to compel or take substantial time to review. This is particularly evident because Intel reports its summarized financial results in Form 10-K filings with the United States Securities and Exchange Commission (SEC).

(a predecessor in interest to NXP, and Plaintiff Ascale), and received confidential and privileged information from their employers. Notably, each of these investors was heavily involved in the privileged patent application process and the related technology on which they now consult. They now misuse that confidential and privileged information against Ascale and NXP. Defendants allege that they are not retaining these inventors as experts, however, these cases weigh equally against use of an inventor with confidential information of an adverse party as a consultant. *See Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 424 F.3d 1161, 1167, 76 U.S.P.Q.2d 1524, 1528 (Fed. Cir. 2005) ("[A]ssignor estoppel prevents an assignor from asserting that its own patent, for which it may have received value upon assignment, is invalid and worthless. The district court properly excluded Mr. Young's testimony on this basis.")

The outcome of that motion will have a significant impact on fact discovery, including the discovery that needs to be sought regarding Defendants' amended invalidity contentions from Mr. May and Mr. Mulligan. Allowing time to decide that motion during fact discovery will likewise streamline this matter.

## II. DEFENDANTS' PROPOSAL

Ascale asks the Court to add nine months to every remaining deadline in this case. To avoid motion practice, Defendants proposed a compromise that moves every deadline ***after the close of fact discovery*** by the full nine months Ascale seeks but keeps the November 16, 2026, close of fact discovery for the parties in place.[2] Ascale refused, insisting that fact discovery for the parties be extended as well. But fact discovery has already been ongoing for five months. Both sides have submitted final contentions setting forth their infringement and invalidity positions.

[2] For third-party subpoenas served at least 30 days before the close of fact discovery, Defendants do not oppose extending the deadline for responses to eight weeks before expert reports.

Defendants have produced tens of thousands of pages of documents and responded without delay to every interrogatory propounded. Indeed, Intel made available the source code for its accused products ***more than seven months ago.*** To date, Ascale has ***never*** reviewed that code nor disclosed a single expert it seeks to have review it.[3] Intel has also offered dates for six witnesses to testify on the sixty-two topics in Ascale's Rule 30(b)(6) notice, and Altera expects to provide witness availability in the coming days, all before the November 16 close of fact discovery. Against this background, none of Ascale's grounds justify any delay, let alone nine months of additional party fact discovery, which would serve only to impose additional burden and cost on Defendants.

***First***, the pending claim construction dispute does not justify more fact discovery. Claim construction disputes are often not resolved until near or after the end of fact discovery. *See, e.g.*, *NEC Corp. v. Anker Innovations Tech. Co.*, No. 2:24-cv-00720-JRG, Dkt. 91 at 3 (E.D. Tex. Apr. 8, 2026), Dkt. 157 (E.D. Tex. June 26, 2026) (claim construction order entered eleven weeks after close of fact discovery); *Ascale Techs. LLC v. Tex. Instruments, Inc.*, No. 2:25-cv-00243-JRG, Dkt. 81 at 3 (E.D. Tex. June 4, 2026), Dkt. 86 (E.D. Tex. June 18, 2026) (in parallel case involving Ascale, court issued claim construction order five days before close of fact discovery); *Cactus Wellhead, LLC v. Cameron Int'l Corp.*, No. 2:24-cv-1010-JRG, Dkt. 54 at 3 (E.D. Tex. Mar. 6, 2026), Dkt. 77 (E.D. Tex. May 27, 2026) (claim construction order entered six weeks after close of fact discovery).

Ascale's conclusory claim that the disputed terms affect "the relevant testimony that needs to be obtained from witnesses during depositions" rings hollow; Ascale's only noticed party depositions are corporate depositions of the Defendants with topics focused on the operation of

[3] After receiving Defendants' portion of this submission, Ascale's attorneys announced they would review the code for the first time on October 13, 2026.

the accused products and Defendants' business (e.g., financials, marketing) as it relates to those products. Whatever constructions the Court adopts, the ***facts*** about how the accused products work and Defendants' business will be the same. In the event Ascale seeks testimony specific to any disputed term, it can ask questions about them under both sides' proposed constructions. Any efficiencies that will result from having a claim construction order that narrows the scope of asserted claims will be realized during expert discovery and dispositive and *Daubert* motions, which Defendants have already agreed to extend significantly.

***Second***, the pending protective order similarly does not justify more ***fact*** discovery. Contrary to Ascale's claims, Intel's source code has been available for inspection for over seven months. *See* Hirsch Decl., Ex. 1, Feb. 27, 2026 Letter from T. Lampert at 2. Ascale could have reviewed that code at any time under the conditions Intel offered, which allowed Ascale to print code for use in expert reports and have the printouts delivered to its counsel—conditions substantively identical to terms entered in prior cases, including a case Ascale itself is a party to. *Id.* at 3. Ascale nonetheless never identified any consultant or expert it desired to have review it, or asked Defendants to allow one access to the code. Ascale also never suggested source code access was necessary to its case. To the contrary, when final contentions were due on June 15, 2026, Ascale served nothing new and instead told Defendants it would rely on its original contentions, which cite ***none*** of Defendants' source code. Ascale is now bound to those infringement theories.

Ascale's argument that Intel somehow "prohibited" Ascale from having its experts review source code is also wrong. When Intel made the code available in February 2026, Ascale had failed to engage in negotiating the terms of a protective order governing disclosure of experts. Intel therefore produced the code under the Court's Interim Protective Order, which only refers to

review by outside counsel. At any point, Ascale could have requested expert review or agreed to (or at least engaged with) the terms Intel had proposed for expert review of source code. In any event, following the Court's September 16, 2026 Order, Ascale finally agreed to numerous proposed protective order provisions it previously protested, ***including the procedure for disclosing expert***s, and the parties submitted a joint proposed Protective Order with only a narrow dispute remaining regarding how many and to whom hard copy printouts of code will be delivered. *See* Dkt. 67 at 1–2. Even that remaining term tracks orders entered in Intel's other cases in this District. *See, e.g.*, *ParkerVision, Inc. v. Intel Corp.*, 20-cv-00562-ADA, ECF No. 68 at 8 (W.D. Tex. Nov. 5, 2021); *VLSI Tech. LLC v. Intel Corp.*, 21-cv-00057, ECF No. 75, at 15–16 (W.D. Tex. Sept. 16, 2019). Yet since the parties submitted that joint proposed Protective Order on September 23, Ascale has ***still*** not disclosed a single expert or consultant under the agreed terms. Even when Ascale first requested to review the code on October 5, 2026, it stated only that its counsel, not an expert, would review the code—directly contradicting its statement now that code requires "review by an expert." *Supra* at 3. That lack of diligence alone is sufficient reason to keep the November 16 deadline. *See, e.g.*, *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (good cause requires the movant "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension"); *Puig v. Citibank, N.A.*, 514 F. App'x 483, 488 (5th Cir. 2013) (affirming denial of scheduling order modification where movants "failed to show diligence in meeting the scheduling order's discovery deadline," and failed to explain their inability to complete discovery before the deadline); *In re E.F. Hutton Sw. Props. II, Ltd.*, 953 F.2d 963, 973 (5th Cir. 1992) (affirming denial of more discovery when plaintiff "had seven months" to conduct discovery and failed to diligently pursue it).

In any event, every concern that Ascale raises about the protective order, including the need to review and time to understand source code, involves its ***experts***, and every case it cites concerns what an ***expert*** may rely on. *See supra* at 4. Defendants have already agreed to move every expert deadline by the full nine months Ascale requests. Ascale identifies no good cause for moving the fact discovery deadline.

***Third***, Ascale does not need nine more months of fact discovery, from Intel or third parties, to obtain Intel's U.S. sales volumes. As Intel has already explained to Ascale, Intel does not maintain U.S.-specific financial data for the accused products. Intel produced its financial data for the accused products—including worldwide billings, unit volume, cost of sales, and profit-and-loss data for the accused products—as it is maintained in the ordinary course of business in July 2026, and identified that data in its August 17, 2026 supplemental response to Interrogatory No. 4. Ascale calls that supplement "belated," *see supra* at 5, but it was not—Intel served it ***three months*** before the close of fact discovery.

Further, Intel has agreed to produce transactional data that will allow Ascale to determine the percentage of units sold that have a nexus to the United States, which it could then use to calculate a portion of the financial data attributable to such units. Intel has already produced that data through May 2025 and will supplement with data through the most recent quarter available promptly.[4] Intel is also producing a corporate representative in response to Ascale's 30(b)(6) notice on topics related to Intel's financial data for the accused products and has offered that

[4] Ascale's suggestion that Intel "withheld" this data and produced it only to moot the scheduling dispute is belied by the correspondence between the parties. Intel agreed on September 16 to produce this transactional data in response to Ascale's complaint that Intel's financial data was worldwide. Sept. 16, 2026 Letter from A. Coneys at 3. The first time Ascale cited Intel's financial discovery as grounds for its requested extension was nearly two weeks later on September 29. In any event, as Ascale now acknowledges, Intel has produced voluminous transactional data in response to Ascale's demands.

witness for deposition on October 29. Ascale will therefore have the transactional data it needs to calculate Intel's U.S. sales volumes, and the chance to question Intel's representative about it, weeks before the current fact discovery deadline. It does not need nine more months of fact discovery, or discovery from Intel's customers, who lack relevant information concerning where Intel sells and manufactures the accused products. In any event, Defendants have already agreed to accommodate reasonable extensions and do not oppose extending the response deadline for Ascale's third-party subpoenas if needed, *see supra* n.2, so those subpoenas are no reason to extend the deadline for party fact discovery. Nor can Ascale justify extending fact discovery based on the volume of Intel's transactional data. Defendants have agreed to a nine-month extension of expert discovery, providing ample time for Ascale's analysis.

***Fourth***, Ascale's threatened motion to "disqualify" three named inventors, Marcus May ('266 patent), Daniel Mulligan ('991 patent), and Christopher Chun ('136 patent), does not justify an extension. As a preliminary matter, Ascale's threatened motion is baseless. None of Ascale's cited authority supports a proposition that ***fact witnesses*** with relevant, non-privileged, non-confidential information can be "disqualified" for having had a prior confidential relationship with a former assignee of the asserted patent.[5] Moreover, Ascale's own authority requires the party seeking disqualification to identify specific confidential information. *Four Batons*, 2025 WL 1658922, at *2, *4 (denying disqualification). Yet Ascale does not identify ***any*** privileged or confidential information Defendants received from any inventor, much less relied on. Instead,

[5] Both *Sensormatic* and *Koch* involve the exclusion of ***expert*** testimony. Even *Sensormatic*, where the court disqualified an inventor from serving as an expert, made clear that "nothing in this order will prohibit the defendants from deposing [the inventor] and obtaining discovery of the facts known to him." 2006 WL 5111116, at *4. *Pandrol* is likewise inapposite. There the court affirmed the exclusion of an inventor's testimony on two grounds: assignor estoppel barred him, as the patent's assignor, from testifying against its validity, and his declaration offered expert opinion without an expert report. 424 F.3d at 1166–67. Neither is relevant here.

Ascale asserts without any evidence that the inventors "misuse [] confidential and privileged information against Ascale and NXP," *supra* at 7. Contrary to Ascale's unfounded speculation, the fact that the inventors were NXP employees in no way means that they have disclosed or will disclose confidential or privileged NXP information or that Defendants have relied or will rely on any such information.[6] By Ascale's logic, no inventor could ever testify regarding their patents because at some point they may have been exposed to confidential or privileged information. That is not the law.

In any event, Ascale does not make any attempt to explain how a hypothetical future motion to disqualify three witnesses necessitates any delay in fact discovery, let alone nine more months. It does not. As Ascale acknowledges, Intel disclosed in its First Amended Initial Disclosures—served more than ***seven weeks ago*** on August 17, 2026—that counsel for Intel represents Mr. May and Mr. Mulligan. To the extent Ascale truly believed there was an issue to be resolved before fact discovery closed, it has again failed to act diligently. Instead, Ascale waited until now—as it attempts to manufacture reasons to demand a case extension—to announce its ***intent*** to file a motion at an unspecified future date.

***Finally***, extending party fact discovery would prejudice Defendants. This case has been pending for more than fifteen months. Defendants have already undertaken the significant burden of providing technical documentation regarding thousands of accused products, including source code, answering and supplementing their responses to Ascale's interrogatories, and preparing for

---

[6] The only information from Mr. May described in Defendants' motion to amend their invalidity content is that he worked on SigmaTel's STMP3550 chip, that the chip ran the first-generation iPod Shuffle, and that it included a power monitor circuit. Dkt. 65 at 4; Dkt. 65-1 ¶ 4. None of that is privileged or confidential. Indeed, NXP, SigmaTel's successor-in-interest, reviewed the public version of that motion before it was filed, which did not redact the description of Mr. May's statements, and confirmed that "the confidentiality redactions look appropriate." Hirsch Decl., Ex. 2 (Sept. 11, 2026 Email from M. Chibib).

numerous corporate designees to testify on the 123 topics in Ascale's Rule 30(b)(6) notices to Intel and Altera. At the parties' September 21 meet-and-confer, Defendants asked whether Ascale would forgo additional written discovery and further demands on its existing requests after November 16 if the fact discovery deadline moved. Ascale would not agree. An extension would thus expose Defendants to nine more months of new discovery demands, and the cost of responding to them, on top of the substantial discovery they have already provided.

For the foregoing reasons, Defendants respectfully request that the Court enter Defendants' proposed schedule.

Dated: October 9, 2026

Respectfully submitted,

*_/s/ Vincent J. Rubino, III_*
Raymond W. Mort, III
Texas Bar No. 00791308
Email: raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
111 Congress Avenue, Suite 500
Austin, Texas 78701
Telephone: (512) 677-6825

*OF COUNSEL*:

Peter Lambrianakos (*pro hac vice*)
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III (*pro hac vice*)
NY Bar No. 4557435
Email: vrubino@frlip.com
Jacob Ostling (*pro hac vice*)
NY Bar No. 5684824
Email: jostling@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue, Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF ASCALE TECHNOLOGIES, LLC***

*/s/ Sarah R. Frazier (with permission)*
Brian C. Nash (SBN: 24051103)
BNash@mofo.com
**MORRISON & FOERSTER LLP**
300 Colorado Street, Suite 1800
Austin, TX 78701
Telephone: (512) 617-0650
Facsimile: (737) 910-0730

Sarah R. Frazier (Mass. BBO No. 681656)
sarah.frazier@wilmerhale.com
Jordan L. Hirsch (*pro hac vice*)
jordan.hirsch@wilmerhale.com
Thomas F. Lampert (*pro hac vice*)
thomas.lampert@wilmerhale.com
**Wilmer Cutler Pickering Hale and Dorr LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Haixia Lin (*pro hac vice*)
haixia.lin@wilmerhale.com
**Wilmer Cutler Pickering Hale and Dorr LLP**
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Taylor Gooch (*pro hac vice*)
taylor.gooch@wilmerhale.com
**Wilmer Cutler Pickering Hale and Dorr LLP**
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001

***COUNSEL FOR DEFENDANT INTEL CORPORATION***

*/s/ Tara D. Elliott (with permission)*
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
Email: pamstutz@scottdoug.com

Tara D. Elliott (pro hac vice)
Jacob C. Vannette (pro hac vice)
Connor Wheeler (pro hac vice)
Brian Smallshaw (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Tara.Elliott@lw.com
Jake.Vannette@lw.com
Connor.Wheeler@lw.com
Brian.Smallshaw@lw.com

***ATTORNEYS FOR INTERVENOR ALTERA CORPORATION***

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Ascale conferred with counsel for Intel and Altera in good faith regarding the relief requested in this Motion. This motion is filed jointly by the parties.

*/s/ Vincent J. Rubino, III*
Vincent J. Rubino, III